We will hear argument first this morning in Case 23-1201, C. DeVos-Mauritius Ltd. v. Antrix and the consolidated case. Mr. Street. Mr. Chief Justice, and may it please the Court, an arbitral award against a foreign state is worth little if no courts can enforce it. Congress added the FSIA's arbitration exception to allow U.S. courts to enforce New York Convention awards against foreign sovereigns. The Ninth Circuit's holding that the FSIA requires minimum contacts is atextual and would gut Congress's purpose. Antrix has abandoned it, and this Court should reject it. Antrix's new argument that the arbitration exception requires a nexus with U.S. commerce is waived and meritless. Congress knew how to require a U.S. commercial nexus, and it did not do so in the arbitration exception to allow enforcement of all Convention awards. Antrix's constitutional defense also fails. Every circuit post-Weltover has correctly held that foreign states are not persons protected by due process. Nor does the Fifth Amendment reverse incorporate a minimum contacts requirement from the Fourteenth. In any case, Antrix consented to personal jurisdiction when it agreed to arbitrate under the Convention. I welcome the Court's questions. Would you elaborate on your point that Antrix's argument that the arbitration exception requires minimum contact without more? Yes, Your Honor. And I would like to first point out that Antrix conceded below that the arbitration exception applies. The District Court recognized that, and the Circuit Court recognized that at pages 4 and 22 to 23. Now they are arguing that the arbitration exception, as I understand it, by its own terms requires a nexus with U.S. commerce. I don't anymore understand them to be arguing that the arbitration exception requires minimum contacts under the international SHU standard. But to the argument that Antrix does make, which is that the subject matter capable of settlement by arbitration language in the arbitration exception somehow reads in a U.S. commercial nexus, I would have a couple things to say about that. First of all, Congress knew how to require a nexus with U.S. commerce. It did that in the commercial activity exception. It did that in A2 through A5 of the original FSIA exceptions. But Congress did not do that here because it was looking to enforce the New York Convention, which does not require minimum contacts. Congress viewed that as an example of a waiver and a consent to personal jurisdiction, similar to what the original FSIA already allowed under A1. Now Antrix's textual argument regarding the subject matter capable language is not only waived, but it's completely meritless. No court, no scholar has ever adopted that, and that's for good reason. That subject matter capable language comes directly from the New York Convention, and this court construed that very language in Mitsubishi Motors. And this court explained that for a matter to fall outside of the subject matter capable of arbitration clause, Congress would need to expressly legislate that a particular category of cases was not arbitrable and instead had to be heard by U.S. courts. Congress knows how to do that. We cite examples in our reply brief. Perhaps the most recent is 9 U.S.C. section 402, in which Congress held that sexual assault cases at the election of the plaintiff are not arbitrable and must be heard by a U.S. court. But Congress did not do that with respect to international commercial disputes, and the United States has cited no statute in which Congress carved out international commercial affairs from arbitration. Quite the contrary, the New York Convention in Articles 2 and 3 expressly require U.S. courts to recognize international arbitration awards so long as they are commercial and rendered in the territory of a signatory state. So is it your argument that we do have to address the arbitration exception argument that is now being made? I mean, I understand you to be saying that the argument that Andrzejczyk is making today is not the argument that they made below, and therefore perhaps the court shouldn't reach it. Is that your view, and what do we do with the fact that it relates to subject matter jurisdiction? Does that have any role? This court should reach it at least to the extent to say that it has been affirmatively waived below when Andrzejczyk conceded that the arbitration exception applied. We think that's all that the court needs to do. Now, of course, we think this issue is easy enough that if the court thinks it's closely enough related to the question presented that it can readily reject Andrzejczyk's argument. Can it be waived? Doesn't it go to subject matter jurisdiction? I think ordinarily that's a concept we would think about, but not under the Foreign Sovereign Immunities Act, because the Foreign Sovereign Immunities Act bases subject matter jurisdiction on one of the immunity exceptions being satisfied. We came into court below and identified the arbitration exception as having obviously been satisfied. Andrzejczyk's agreed to that, and when Andrzejczyk's agreed to that, that became a waiver under 1605A1, which recognizes that if foreign states wish to, they may come into U.S. court and simply waive immunity or waive objections to personal jurisdiction. Turning to the constitutional argument for a moment, we agree that the court should reach that issue in part because this court already has a similar case before it in which all three of the potential sub-issues in Andrzejczyk's constitutional defense were passed upon in the Second Circuit, and I'm referring, of course, there to the Fold v. PLO case. That case potentially contains both the person issue, both the question of whether the minimum contacts test is required by the Fifth Amendment in an equal way to the Fourteenth, and it also includes a statute that deems consent to personal jurisdiction. We think the court could apply whatever it says in Fold to the dispute here and may be able to straightforwardly reject aspects or all of Andrzejczyk's constitutional defense. I'm sorry. You're asking us to reach it or not reach it? We're asking you to reach it, and we think that it may be— If we have a case where all issues are being raised, why should we reach part of them here when that wasn't reached below? My suggestion was that because the court is going to have that same case before it in one month, it may make sense to observe how the court resolves that case and then apply whatever teaching— Hold yours till then? I think that would make a lot of sense because, for example, if the court— Why can't we just answer the question presented, which was whether the FSIA requires minimum contacts statutorily and let you on remand or let the court below on remand address the issues that weren't addressed below, the arbitration issue and the minimum contacts issue? So the court can certainly do that, and we would be satisfied with that disposition, and we think it would do a world of good in clearing up that important issue of federal law. Our point is simply that even apart from FOLD, we agree with the United States that there is a quite straightforward way to resolve antrixist constitutional defense here that importantly arises in a lot of FSIA cases and really causes confusion in the background of a lot of FSIA cases, and I'm referring particularly to two of the sub-issues of antrixist constitutional defense. The first is that even if you assume antrix is a person, and even if you assume the Fifth Amendment generally requires minimum contacts, consent to personal jurisdiction is always a way to satisfy the Fourteenth Amendment, and as Professor Feldman spells out at great length in his amicus brief, Congress operated on the assumption that agreeing to arbitrate in a New York Convention state consents to personal jurisdiction in the United States, and that is true as a constitutional matter as well. I think this is an a fortiori case from Mallory, for example, because these are the very instances in which a foreign state would know that it was consenting to personal jurisdiction in the United States. Thank you, counsel. You've answered my question. I think the second constitutional issue on which we agree with the United States that the court could reach, and I say may not reach in FOLD, is whether foreign states are persons under the Due Process Clause, and But just to be clear, the lower court in this case did not rule on that, so we would be doing this in the first instance. The district court ruled on it, but the Court of Appeals did not reach it. And the Court of Appeals recognized that there is a lot of confusing pre-Weltover precedent out there that suggests that foreign states are persons, but the panel below grounded the minimum contacts requirement in the statute and not in the Constitution. And we are submitting to this court that it would be helpful to clear up a lot of that confusion that is causing courts to adhere or potentially adhere to pre-Weltover precedent by agreeing with our position and the position of the United States that foreign states are not persons. Thank you, counsel. Justice Thomas, anything further? Justice Sotomayor? Justice Gorsuch? Thank you, counsel. Mr. McGill? Mr. Chief Justice, and may it please the Court. The Ninth Circuit's construction of Section 1330B is unfaithful to its text. Congress provided in the FSIA that personal jurisdiction shall exist over every claim where there is an immunity exception and service. There simply is no room in that very clear statutory text for a minimum contacts requirement. And the Fifth Amendment does not condemn Congress's choice, a choice that Congress made in the India is not a natural or artificial person protected by the Fifth Amendment. And in any event, the FSIA provides at least as much process as this Court hypothesized would be sufficient to hail a foreign natural person into court almost 200 years ago in Tolan v. Sprague. I welcome the Court's questions. Am I right that you want us to resolve the constitutional question? Yes, Your Honor. Do we need to resolve it? You do not need to resolve it to reverse the judgment of the Ninth Circuit. The District Court held that due process did not apply to antrics here because it was the alter ego of India. No statutory argument had been raised in the District Court. It was conceded in the District Court that there was personal jurisdiction under the statute. But we have urged that this Court reach the constitutional question lest any remand here be a round trip. The Ninth Circuit has held in its decision of Gregorian v. Izvestia that if there is no immunity under the FSIA, the Court still must then consider whether, quote, the constitutional constraints of the due process clause preclude the assertion of personal jurisdiction. And that, quote, requires satisfaction of the traditional minimum contacts test. And as we see from this case, the Ninth Circuit has been at least somewhat reluctant to address its older precedents post-Weltover. It has relied on Miller v. Gammy saying that there must be a clear decision by this Court overruling the prior decisions of the Ninth Circuit. So to turn quickly to the new argument that has been advanced by antrics in this Court concerning 1605A6, the arbitration exception, that fails for three independent reasons. First, in addition to the fact that it's waived. But if we look to the text of Section 1605A6, the argument is essentially that the words subject matter capable of arbitration under the laws of the United States requires that the plaintiff be a United States person. That simply does not follow from any part of the text of the U.S. Code. This provision, the subject matter capable, as my friend represented, is taken straight from the New York Convention. This Court said in Mitsubishi Motors that for something to be deemed subject matter not capable of being arbitrated under the laws of the United States requires an express direction from Congress. There is an express direction of Congress of that type in Section 402 of the Federal Arbitration Act, 9 U.S.C. 402. But Section 2 and Section 203 do not provide anything like that. All those provisions provide is what the FAA and the New York Convention apply to. There is no prohibition on arbitration under the laws of the United States of things that are not covered by the FAA. So I think that's the first reason. But then after you, even if it were true that the arbitration exception was limited to U.S. persons, that would not get you to a minimum contact standard. The minimum contact standard looks to the contacts of the defendant. The fact that it's a U.S. person bringing the arbitration claim is practically neither here nor there to a minimum contacts analysis. So there is no basis for holding that the arbitration exception itself, no textual basis for holding that the arbitration exception itself incorporates a minimum contact standard. And as my friend Mr. Street said, it would gut the very purpose of the New York Convention, which is to make arbitration awards enforceable on an international basis. Turning to the constitutional question that we urge the court to reach, I don't think that there's any very serious argument that India, as a foreign sovereign, is a person within the meaning of the due process clause. This court held in Katzenbach that a state is not a person under the due process clause, and there's no reason to think that a foreign state would be a person if a state of the union is not. It's of course not a natural person, nor is it a legal person created under the laws of India. India, the nation, is something altogether different. Can I ask you, if we vacate and remand on the statutory question, is there anything precluding the parties from making the arguments related to the constitutional issue on remand? Absolutely not, Justice Jackson, because as the case came to the Ninth Circuit, the holding of the district court was that the due process clause did not apply, because antrix is the alter ego of India, and India is not a person. And the district court said in the alternative that there were minimum contacts had been satisfied. The Ninth Circuit, although the statutory argument had not been raised in the court of appeals, the Ninth Circuit said that there was a minimum contacts requirement within the statute. It did not address the constitutional question in the four corners of its opinion. But our concern is that Gregorian versus Izvestia tells us where the remand might very well end up. Thank you, Counsel. Justice Thomas? I have a question from Curiosity. This is not an enforcement action. It's a motion to confirm the arbitration award. How does that get you anything if there are no resources here to enforce it against? So, Justice Sotomayor, we filed a motion to confirm the arbitral award. That motion ultimately was granted and a money judgment was entered, and then it was appealed. There was no stay pending appeal, and we did indeed execute on an asset of antrix. Antrix had filed a bankruptcy claim in the Eastern District of Virginia, and we seized it. So that's the purpose of these confirmation awards is to seize property of a debtor on a judgment. It's to enforce the arbitral. Now, if you don't get it confirmed now, could you – you have no basis to attach the property that's here. Otherwise, is that it? Because the rest would be here. Your Honor, if this court vacates the decision of the Ninth Circuit, that would have the effect of restoring the judgment of the district court. So we would indeed have an enforceable judgment at that time. And as the district court held, antrix is the alter ego of India, so we could seize not only antrix's assets but any of those of India as the Foreign Sovereign Immunities Act would allow. Ah, okay. Thank you. Is there any – I believe my red light has been on. No, sorry. I – I – Thank you, Counsel. Thank you. Ms. Harris. Mr. Chief Justice, and may it please the Court, this case should begin and end with the FSA's text. Section 1330B prescribes when personal jurisdiction over a foreign state shall exist and omits any minimum context requirement. That is all this Court need hold to reverse. The Ninth Circuit's contrary statutory holding disregards that text, and no one, even Respondent, appears to defend it. Respondent instead belatedly injects novel issues, such as the scope of the arbitration exception, that it waived below and that the U.S. has had no chance to brief. The lower courts should address those tangents in the first instance. I welcome the Court's questions. I know you think that the Respondent waived the arbitration exception point, that even that requires some nexus. Do you have any preliminary argument as to whether they're right on the merits of that argument? Yes. In addition to thinking that's waived, we have three objections that we would have briefed given the opportunity. One is that we agree with Petitioner's view that under this Court's decision in Mitsubishi, for something to not be a subject matter capable of arbitration under U.S. laws, there needs to be something expressed in U.S. law putting it off bounds, like, for instance, the sexual assault exclusion for certain circumstances under 9 U.S.C. 402. And there's nothing like that here. The thing they're pointing to is the Federal Arbitration Act, but that simply suggests that federal courts can, in fact, consider matters that arise under domestic commerce, not that that's the only thing that's arbitrable under U.S. law. Second point on this is that Chapter 2 of Title IX is devoted in painstaking detail to implementing the New York Convention, and its provisions are flatly inconsistent with the idea that only U.S. commerce is allowed or that you could only have a foreign sovereign subjected to U.S. courts for enforcement of a New York Convention matter based on those. So just start with 9 U.S.C. 202, which provides that matters arising under the New York Convention just need to involve commercial matters, not matters involving U.S. commerce commercial matters. Section 203 goes on to create original jurisdiction and federal courts over all those matters and treats them as arising under the laws of the United States. That's not the kind of language that is putting those matters off limits for U.S. courts as subject matters people of arbitration. And then to remove any doubt, Section 208 provides that if there is any tension between Chapter 2, which is this whole reticulated scheme for enforcing the New York Convention, and Chapter 1, the domestic FAA, where respondents are drawing their limitation, Chapter 2 wins. And so that's the second point. And third is just with respect to the arbitration exception itself, respondents' view makes very little sense. So their idea is that the subject matter capable of arbitration in the U.S. has this implicit limitation for U.S. commerce, but the place where Congress seems to have accounted for U.S. interests and required something short of a nexus but a connection is actually A through D of the arbitration exception. So, for instance, 1605A6A says if you're a foreign sovereign, you can send it to arbitration, et cetera, plus you have agreed to arbitrate the matter in, say, New York or anywhere else in the United States. That suffices. Or under B, if it's a treaty that the U.S. ratified, that suffices. Or under C, if it's a matter that could have otherwise been brought in U.S. courts but for the arbitration agreement, that suffices. It's hard to fathom why Congress would have taken the trouble to create these very specific grounds for identifying something connected to the United States, whether it's arbitrating here, ratifying a treaty that the U.S. is a party to, or having something that could have otherwise been brought in U.S. courts or there's otherwise a waiver, if Congress all along wanted this massive limitation that no court has ever adopted and it is flatly contrary to the way that arbitration agreements and treaties have been enforced in the United States for a long time. So that's what the United States would like to have reaped. Ms. Harris, here's another unfair one for you. The parties quarrel over whether the Fifth Amendment requires minimum contacts in the way that the Fourteenth does. I know you've counseled us not to address that question, but if you were to, what would you say? If we were to, our brief in fold does address these points, albeit as a second-level fallback there as well. And the United States position in fold is that the Fifth Amendment due process inquiry is different, given the nature of the Fourteenth Amendment. It's a territorial limit on states. This Court's recognized in cases like Jane McIntyre, BMS, a long line of cases, that the Fourteenth Amendment also implicates federalism interests that, of course, do not apply when you're talking about Fifth Amendment due process, and that when you're thinking about Fifth Amendment due process, one, you know, you're thinking about Congress and Congress's powers, especially over foreign affairs. I appreciate all that, but minimum contacts, is there some hook in the Fourteenth Amendment to require them independent of what Congress has provided? So independent of what Congress is providing, the United States position in fold is no, the minimum contacts would not be the right test. Thank you. And just to reiterate, you know, this seems like a straightforward case. Everyone appears to agree on the question presented. We would, therefore, ask that the Court reverse. Questions? What about the question whether a foreign state is a person? Whether a foreign state is a person? So the United States, if you were to entertain the concept of the due process question being in this case, the United States' position is that foreign states are not persons for constitutional purposes, consistent with what this Court suggested in Weltover and the post-Weltover consensus of courts of appeals. That flows from, first of all, I mean, I think the way the Constitution deals with foreign states, by calling them foreign states and foreign nations, as distinct from persons, and the fact that foreign nations deal with the United States on the plane of international relations, where they have all sorts of tools of diplomacy that are very far afield from the idea that foreign sovereigns can invoke due process in U.S. courts to sort of thwart the judgments of the political branches as to when they should face suit. That carries immense foreign relations concerns, which is something the United States cares obviously a lot about in terms of flexibility in dealing with foreign countries. Do you think Mr. McGill is correct that if we don't reach the issue it will just bounce back here very quickly? Respectfully, I would point you to the parts of the Ninth Circuit panel decision at 5A and then the concurrence of two members of that panel at 10A, which suggests that they solely thought that they were reaching a statutory holding, but that they did not believe that the Ninth Circuit had held that foreign sovereigns were persons for due process purposes, and the panel expressed extreme skepticism about that proposition for the reasons I've kind of outlined. Thank you. Further? Thank you, counsel. Mr. Phillips? Thank you, Mr. Chief Justice. I think it's appropriate to try to take a step back and understand the context in which this case arises. We are here talking about an arbitration agreement between two corporations incorporated in India, entering into a contract that was executed in India to be performed in India. When there was a disagreement between the parties, the contract specifically provides that that agreement should be resolved by arbitration in India, according to Indian law, and that after that, according to the government of India, by a court of competent jurisdiction, it would be reviewed by an Indian court. There is nothing in that agreement that remotely implicates any interest of the United States of America, and there's certainly nothing in that entire enterprise that remotely affects either interstate or foreign commerce. And that is a fundamental limitation of the Federal Arbitration Act. It begins with the proposition that this statute is limited to actions that operate in interstate or foreign commerce, and therefore this is outside of the Federal Arbitration Act. If you look at Section 202, which the Solicitor General herself makes reference to, she quotes the first sentence talking about commercial and what that means, and commercial in that context, I think it clearly goes back to Section 2 and Section 1, which takes you right back to the Commerce Clause, Foreign Commerce Clause restriction. But read the second sentence of Section 201. An agreement or award arising out of such a relationship, which is entirely between citizens of the United States, shall be deemed not to fall under the Convention. So when you have two U.S. citizens, they enter into an arbitration agreement, that's not part of the Convention. It seems to me quite improbable, candidly, that the United States Congress that wrote that language had in mind that an agreement entered into by two Indian citizens could in fact be reviewed by a U.S. court. To be sure, once you have confirmation, and I think this goes to your question, Justice Sotomayor, once you have confirmation, then you can execute literally anywhere in the world where you can find property. There's no question about that. The issue in this case is confirmation. What courts have the ability to convert the arbitral award into a judicial decree? And I submit to you that the only court that has that power to do that here would be the court in India, which in fact has held that this award should be set aside. Can I just go back to that? What difference does it matter under your theory that this contract is between two Indian citizens as opposed to let's say it was an American corporation who contracted to do exactly the same thing in India? Would that be considered a commercial transaction subject to the FAA? So you're talking about a U.S. citizen enters into an agreement. That would make all the difference in the world because that's an agreement operating in foreign commerce. So it's not the subject matter of the contract? You think it has to do with who's making the contract as opposed to the subject matter? Yes, I think Mitsubishi says it has to do with both. Subject matter capable of settlement by arbitration under the laws of the United States, to be sure, includes things like could you exclude antitrust, can you exclude domestic relations. Those are subject matters. But there's also a subject matter. But that seems to be all it excludes, meaning I don't see anything in the language of the convention that suggests that the citizenships of the parties entering into the agreement have anything to do with the subject matter. Section 202 takes you straight back to Section 2 and Section 2 takes you right back to Section 1. Mr. Phillips, the one thing this is leading me to believe is that this wasn't adequately argued below. Whether you have – But this is subject matter jurisdiction. Is it, Mr. Phillips? That was my question. I'm trying to figure out whether your argument is, you know, seated in subject matter jurisdiction or personal jurisdiction. I understand the thrust of what you're saying, but where is it coming from in terms of the doctrines that we use to evaluate the limits on judicial authority? Right. 1330A says that there is only subject matter jurisdiction when there is clearly an exemption to the Foreign Sovereign Immunities Act that operates. And counsel on the other side says that below at least you conceded that the arbitration agreement or the arbitration exception applies here and there was subject matter jurisdiction.  But this Court still has to – the Court still has to satisfy – I mean, it would be inherent in protecting the interests and rights of a government like India or its state-owned enterprises. Well, I guess I just want to understand your position. Are you saying that the arbitration exception is satisfied here or not? No. I'm saying it's not satisfied here, which is why I didn't – and it's not waivable. And it's not waivable. Correct. So the fact that you said below that it was satisfied, we don't – we're not bound by that in any way. You're not bound by that in any way.  And I think it's fair to – in context, you should recognize, right, the law in the Ninth Circuit was absolutely clear that minimum contacts was required. There was no – there were no minimum contacts in this case and that this case would be easily resolved in the Ninth Circuit on the basis of that interpretation of the FSIA. Have you given up on that? I'm sorry, Your Honor. Have you given up on that? I have given up on that, Your Honor. So why isn't it the right thing to do just to say everybody agrees that the Ninth Circuit was wrong, we toss it back to the Ninth Circuit for everything else? Because in order to get to 1330A, you have to go through – there has to be an exception under the Foreign Sovereign Immunities Act. And if you don't – so you have to have subject matter jurisdiction. Yeah, but why wouldn't the Ninth Circuit be the appropriate forum for that argument in the first instance? Well, I mean, you can always send it back to take that issue up in the first instance, but it is subject matter jurisdiction, Your Honor. Yeah, but it is a new argument that you concede you didn't raise below and, in fact, disclaim below. So why wouldn't we normally send it back? Well, I understand that the Court, even on its own motion, could sua sponte, decide that issue. I understand that. That's not my question, though. My question is this is an argument that you disclaimed in the district court, you disclaimed in the Court of Appeals, and you're making for the first time here. Do you see any impediment to us simply remanding the matter, vacating and remanding the matter, back to the Ninth Circuit to consider your argument in the first instance? It would be a little strange, I guess, for the Court to – You might think it a little strange, but do you see any impediment to it? I would think the Court would want to ensure itself it has subject matter jurisdiction. I suppose the single impediment to it, candidly, would be taking into account the brief filed by the Government of India, which has said all along that this case is – this is an Indian matter that's been resolved by India, et cetera. Yeah, I've heard that. This remains an irritant. I'm looking for a legal impediment to the course that Justice Kagan outlined, and I'm not hearing one. Well, I don't – I mean, unless the Court's willing to ignore the subject matter jurisdiction to resolve a personal jurisdiction. Well, we wouldn't be ignoring the subject matter jurisdiction, Mr. Phillips. We'd just be saying, you know, as to the view of subject matter jurisdiction that was taken by the Ninth Circuit, that's incorrect, nobody defends it, so try again and see whether there's subject matter jurisdiction in this case. Not only does there seem to be no impediment – I mean, I don't see really what's strange about that. I would think it would be strange to do the opposite, given that neither the Ninth Circuit nor, as far as I'm aware, any circuit has evaluated the theory that you're raising now. To be sure – I mean, that's undeniably true. But the bottom line is, is that subject matter jurisdiction is not waivable. We wouldn't be saying it's waivable. We would just be saying, you know, nobody's raised these subject matter jurisdiction arguments. The ones that were raised, the ones that were passed on, are wrong. There are some other arguments that people are tossing around. We're not the people to evaluate that in the first instance, when neither the Ninth Circuit nor any other circuit has done so. Look, to be sure, I think the court can decide for itself how to order up dealing with jurisdictional issues. I would just go back to two points. One is, goes to subject matter jurisdiction, not waivable. Second of all, the longer this litigation continues, it serves as an irritant to the Indian government. Yeah, well, I get that. But part of it is that it's a new argument that's being pressed here for the first time. And so in terms of prolonging the litigation, that seems to me perhaps nobody's hands are entirely clean here. On the question whether it is subject matter jurisdiction, this is a sovereign immunity defense. And that's waivable. So what do we do about that? Well, you don't get to 1330A unless, well, it's waivable, but it hadn't been waived. Well, that is the question. I mean, if you stipulate below that there is statutory basis for the court's jurisdiction, it seems to me that that might have been a waiver. Why wouldn't that be right? Well, as I understand it, subject matter jurisdiction in the ordinary course is not waivable. In the ordinary course, but sovereign immunity is a little different, isn't it? Right. But I would think that in the absence of a clear waiver, which, of course, is the very first exception, right, after you get past the first exception and you're looking at the rest of the exceptions, in that context it would seem to me that you have to, again, waive those provisions explicitly. Yeah. But when you say I agree that there's statutory jurisdiction and you've done it in two courts and it's a waivable defense, I guess I'm a little curious why you aren't stuck with that. The best I can give you is that the court has historically treated this is clearly a subject matter jurisdiction question. That's what 1330A says. You'd agree sovereign immunity is a little bit different when it comes to waivability, wouldn't you? Yes, because the Congress has dealt with it in a little bit different way, but only as to the statement that it waives at the outset, not in the sense that it waives going forward. Again, the U.S. courts only have the authority to deal with arbitrations that have some kind of an international component to them. All right, Mr. Phillips, on the merits of your argument, how do you respond to General Harris's points about the subcategories within the arbitration exception and that those seem to be the place in which Congress was accounting for the kinds of context that you say exists in that prefatory language about subject matter? I would view the prefatory language as not prefatory, but in fact setting out the first limit on the arbitration. So what was the need for the rest of them? First of all, the question is, is this within foreign commerce or interstate commerce? Is this a subject matter capable of resolution by the United States, meaning that it's either in our foreign commerce or within our interstate commerce? And if the answer is yes, then you look at the sub-provisions to say, you know, did the parties agree to have it arbitrated here? Then that would be a reason to bring it here. The first one is just an overarching requirement that you have to affect foreign commerce, which makes sense. That's the limit of Congress's power. Congress doesn't have the power. The United States courts don't have the power to dictate to the world what's fair and just. What about consent? I guess I just don't understand how that necessarily dovetails with the idea that the United States Congress might want to allow for litigation of disputes concerning arbitration agreements where the international parties have agreed to that. But there are no – I mean, I don't know what you mean by international parties. They are non-U.S. parties to be sure, but they are both citizens of India. No, I understand that. But your argument suggests that the Congress could not determine to make U.S. courts available to litigate disputes between non-U.S. parties in the context of international agreements, et cetera, et cetera. And I don't know necessarily – Yes, I think there's a serious question about how far Congress can go. In the first place, why would Congress open the courts and limited judicial resources to resolve the question of the validity of an agreement between non-U.S. citizens on a non-U.S. contract to be resolved by arbitration in a non-U.S. forum subject to review by a non-U.S. court, which in this case has in fact declared – set aside the award, which frankly raises its own mootness issue that the court ought to at least be concerned about in this particular case. So does it matter for your argument that the contract in this case, the parties agreed to have the disputes litigated by an Indian court? What if they had agreed to have it litigated in the U.S.? Could Congress, in your view, given this statute, or could Congress allow for U.S. courts to hear that? That's an interesting – that's a tougher question to be sure. Because again, why would U.S. courts want to waste their resources resolving a dispute of another country? I think in the background, what I'm worried about your argument, in the background we do have international relations and circumstances in which Congress might want to allow for international parties to do certain things as a part of their – of the United States' relationship with other countries. And your kind of blanket subject matter jurisdiction argument seems to me to undercut that in a concerning way. Well, I would candidly be more concerned about the flip side of it, which is – think about this in the concept of reciprocity, Justice Jackson. If you had – General Motors has a domestic agreement with another company, and for some reason the other company refuses to go to arbitration. Under the governments – under the broad theory put forward by the petitioners in this case, that agreement – the unhappy party in theory could go to India or Russia or any of the other 171 signatories and get an order to compel arbitration that would be enforceable in those countries against U.S. citizens. As I said, read the second sentence in section 202. Any dispute between two U.S. citizens is not subject to the Federal Arbitration Act. Why should any dispute between two citizens of another country when it's – unless there are aspects of it that extend beyond that country? It seems to me this goes to – and if you want to know why you should decide it, this is beyond the limits of what I think Congress legitimately can regulate. Ordinarily, that's in constitutional realm, though. But you're making a statute. I'm saying Congress wouldn't have wanted to take this any further than what it said in that statute, and the statute says it's got to be in foreign commerce. And foreign commerce means a relationship between a state, a territory, and a foreign state, not a relationship that arises exclusively between U.S. citizens – I'm sorry, Indian citizens in India under an Indian contract with a dispute resolution system in India to be decided by an Indian court. And then to have the Indian court's decision that set it aside ignored by the U.S. courts. If you want to know where the problems of foreign relations arise, read the Government of India's brief. It tells you that this kind of disrespect to an Indian court, and this kind of disrespect in terms of intruding into the relationship between the state of – the Government of India and its state-owned enterprise to find out what assets are being done and who's doing what with whom, those are the reasons why the court should not be enforcing this kind of award under these kinds of circumstances. But the Solicitor General tells us that the United States' interests would be perfectly well served if we just remanded this case. Well, the Solicitor General also didn't have the benefit of thinking about the Foreign Sovereign Immunities Act argument. I apologize for that. And look, if the court thought – I think the court, rather than remanding, if you take my argument seriously, which I think you have to, then you ought to ask the case – reset the case for argument, rebrief that issue, and then we'll argue that, preferably next month, because it's fresh in my mind. I'd rather not have to renew all of this stuff. But that's for you all to decide. But that would make more sense to me than simply trying to – the problem is you can't just flip off a piece – this is not lint on a sweater that you can knock off and move away. This is attached to the fabric of the sweater through 1330 A and B. 1330 A sends you to the Foreign Sovereign Immunities Act. You have to do business with the Foreign Sovereign Immunities Act. You can't just simply say, well, nothing in 1330 A and B calls for minimum context, because I don't dispute that issue. I recognize that fact. Now, I do think there is a second argument, and I think it's not fair to say that Antrix, which is a foreign corporation, and foreign corporations have long been recognized as having due process rights. That they are persons. And I don't think there's anything – I don't think Benchik's – this Court's decision on Benchik does anything to detract from that. And therefore, they should have a Fifth Amendment right to some form of due process, which in this context I would hope would include minimum context. And we already know from the Ninth Circuit's decision that there are no contexts arising in this case. So there is still a very significant Fifth Amendment issue here for the Court to resolve that only affects Antrix. You know, there's no reason for the Court to decide at this point whether India or any other foreign sovereign is entitled to due process rights. That one I think clearly should be safe for another day. Thank you, Counsel. Thank you, Your Honor. Please affirm. Mr. McGill. Thank you, Mr. Chief Justice. On the construction of Section 1330B, we have another instance of radical agreement. It does not require minimum context. We also have radical agreement that Antrix previously conceded that the arbitration exception applies. That establishes that an immunity exception applies, either under 1605A6, which is the arbitration exception, or 1605A1, which is the waiver exception. Either way, an immunity exception applies. And that is all that is required to establish subject matter jurisdiction under Section 1330A. Going to the merits of the brand-new argument, the relevant text here is subject matter capable of arbitration under the laws of the United States. That is torn from the New York Convention. It appears in both Article II and Article V. It was construed by this Court in Mitsubishi Motors, and it requires an express direction from Congress to exclude a subject matter from arbitration under the laws of the United States. Section 2 of the FAA, Section 202 of Chapter 2 of Title IX, neither of them excludes anything whatsoever from arbitration under the laws of the United States. It is simply not true that just because an item is not something that can be arbitrated under the FAA, it cannot be arbitrated at all under the United States. What we're left with is a policy argument that Congress would not have wanted to allow foreign persons to bring claims to enforce arbitral awards. The Supreme Court, this Court, addressed that in Verlinden, when it said that this Foreign Sovereign Immunities Act allows foreign persons to bring claims. Therefore, because we're talking about the Foreign Sovereign Immunities Act, you're always talking, at least in the language of Verlinden, you're always allowing a foreign plaintiff versus a foreign state defendant. This has been settled since Verlinden. The last point is that if Antrix's argument here were accepted and only U.S. persons can bring claims to enforce arbitral awards, international arbitral awards in the United States, then we could fairly only expect that similar reciprocal limitations would be placed on the ability of United States businesses to enforce their arbitral awards outside of the United States, which is vital to the enforcement of arbitral awards internationally. Thank you, Counsel. The case is submitted.